[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for the dissolution of a marriage. The parties married on April 12, 1985 in Shelton, Connecticut. Both parties have resided continuously in this state for at least twelve months next preceding the date of filing the complaint; therefore, the court has jurisdiction. There are four children who are issue of this marriage: Kimberly, born May 30, 1987; Joseph, born March 8, 1989; Theresa, born June 21, 1991; and John, born February 16, 1995. The parties have entered into a stipulation dated October 22, 2001. That agreement, hereinafter referred to as Stipulation, is made part of the judgment file in this action.
While this action was pending, the defendant filed a Motion forModification of Child Support.[1] In that matter, the defendant has alleged a significant change of circumstances, his recent unemployment, warrants a reduction in his child support obligation.
I. Facts of the Case
The defendant husband, Joseph Hylinski, is a fifty-two year old former newspaper employee. He had worked at the Bargain News, a local merchandise publication, for over seventeen years, but was terminated CT Page 493 August 23, 2001 due to his chronic alcohol abuse. The defendant had earned approximately $600 net income weekly. He had not received a salary increase in over twelve years. The defendant's health, with the exception of his alcohol abuse, is generally good. He has no medical conditions that would preclude gainful employment.
The plaintiff, Tara Malaney Hylinski, is a forty-one year old registered nurse. During this entire marriage, the plaintiff has been employed at a local hospital. She has been the family's primary support. Indeed, because of increasing marital debt, the plaintiff has worked significant overtime hours during the last few years of this marriage in order to meet ordinary household expenses. Her health is also generally good.
The plaintiff was responsible for paying all the household bills. The defendant's income was used primarily to support his alcohol consumption.
The primary asset of this marriage is the marital home located at 8 Alfred Court in Stratford, Connecticut. The parties have owned the property for 13 years. Unfortunately, the house is in general disrepair. The roof needs to be replaced, there are holes in walls and windowsills have rotted. The house is situated on a small lot on a busy commercial street in Stratford.
Both parties offered property appraisals. Due to the condition of the house and location of the property, and considering the testimony of the parties, the court finds that the plaintiff's suggested property value, one hundred and twenty-two thousand dollars ($122,000), is the more realistic figure. Because the property is significantly mortgaged, there is only twenty-two thousand dollars ($22,000) in equity in that home.[2]
Although there are relatively few marital assets, there is a significant amount of marital debt. The bulk of that debt was accumulated in order to maintain the marital home. The defendant's alcohol abuse is another contributing factor to the debt amount.
The plaintiff did inherit some money during the marriage. She was forced to conceal the inheritance from her husband, and used to small windfall to pay for home repairs, local and federal delinquent taxes and a modest amount of new furniture for the home. She used the remaining portion of her inheritance to decrease the marital debt. Had the defendant been aware of the inheritance, he would have used the money to increase his daily alcohol consumption.[3]
II Marital Breakdown
CT Page 494
This court must address the causes of the marital breakdown. Throughout this marriage, the defendant abused alcohol. He drank vodka and gin on a daily basis. Additionally, the defendant was violent and abusive. This latter conduct often was directed toward the plaintiff's son from an earlier marriage, Christopher. During one particularly disturbing incident, the defendant fired rock salt from a shotgun into Christopher's bed. The defendant has also attempted to assault the plaintiff, especially when he was under the influence of alcohol. During these episodes the defendant frequently destroyed marital property.
At various times during the marriage the defendant was arrested.[4]
One of the arrests involved a domestic assault. The defendant was also arrested for driving under the influence. The incidents of drunk driving both occurred at times when the defendant was responsible for transporting his young children. As a result of his second drunk driving conviction, the defendant forfeited his driving privileges for a full year. During that time, the plaintiff was solely responsible for transporting the couple's four minor children.
Domestic violence and a criminal record were not the only legacies of the defendant's alcohol abuse. He lost his ability to visit his children when he consumed alcohol in their presence in violation of an existing restraining order. Those same children had witnessed arguments, assaults and property destruction during their father's multiple drunken episodes at home. The defendant had dissipated the family's limited assets through his alcohol purchases, causing his wife to work overtime in order to meet family expenses. His drinking was not confined to merely purchasing the alcohol. Additionally, he went to local bars and pubs where he charged his consumption.
The defendant's attempts to shift blame are disingenuous. He denies that alcohol has created a problem. His suggestion at trial that one drink is not a problem indicates his total lack of comprehension of the problems his drinking has caused.
Although the defendant argues that he sacrificed his career in order to care for the children, there is no evidence to support this claim. The court finds that the defendant used the children as a convenient excuse for his lack of cooperation. He did not care for the children while his wife worked. Instead, he engaged in personal pursuits, most notably drinking. Nor did he contribute to the other household chores. Photographs introduced at trial indicate that areas within the defendant's immediate control were in a state of shambles. Although he attempts to blame the plaintiff for the general state of clutter and disrepair in the marital home, the simple fact is that the defendant CT Page 495 simply chose not to work around the house.[5]
The evidence is unequivocal that the defendant bears full responsibility for this marital breakdown.
III. Visitation and Custody
The defendant last saw his children on May 15, 2001. At that time, in violation of a court order, he consumed alcohol in the
children's presence. Although the defendant has called his children regularly, since that date he has not asked to see them. He suggests that he be allowed to see his children, unsupervised, after the dissolution, but would only want to have one child at a time. The defendant apparently feels that the burden of caring for four children simultaneously would be overwhelming.
Joint custody requires that parents act as a unit. Communication is essential. In the present case, the court is not convinced that the defendant would be either willing or able to place the needs of his children above his own desires. Although the court will enter an order of joint custody, the court further orders that any decision concerning education and medical issues shall be within the sole discretion of the plaintiff. In the court's opinion the plaintiff has demonstrated a willingness to have the best interests of the children as her primary motivation.
IV Motion to Modify
A. Facts
Shortly before trial, the defendant filed a motion to modify his current child support obligation. At the time the dissolution action began, the defendant worked in an unspecified capacity at Bargain News, a local merchandise newspaper. He had worked in that same capacity for seventeen years. During the last twelve years of his employment, the defendant never received a salary increase.
On August 23, 2001, the Bargain News terminated the defendant's employment. The termination was involuntary, albeit not a surprise. As the defendant testified, he was fired for chronic alcohol abuse, a self-inflicted wound.[6] The defendant has been unemployed since August 2001. He now argues that he does not have means sufficient to meet his child support obligation. In the time between the defendant's termination and the commencement of this hearing, the defendant has made no attempt to secure new employment. CT Page 496
It is apparent that the defendant does not want to find lucrative employment. Instead, he suggests that he should be available to care for his children. His claimed devotion to his children is merely a ruse to avoid finding gainful employment.
B. Applicable Law
Connecticut General Statutes § 46b-86 (a) provides that "any final order for the periodic payment of permanent alimony or support . . . may at any time thereafter be altered or modified . . . upon a showing of substantial change in circumstances of either party." The defendant in his motion alleged that he has become unemployed.
Since the time of the initial child support order, the defendant had gone from a long-term, relatively secure situation to unemployment. This definitely constitutes a change in circumstances. That is not, however, the end of the inquiry. That change must legally warrant a modification of child support.
In determining whether that change warrants a modification of child support, this court must consider a variety of elements. The central determining factor is the support order itself. That order provided a clear and unequivocal requirement that the defendant pay a set amount of child support. This is a statutory mandate. The court has also weighed all other operative variables presented by the parties. They include the defendant's earning capacity, the degree to which the defendant's continued state of unemployment was voluntary, the nature of the unemployment and the lifestyle maintained by the defendant.
In the present case, earning capacity, not actual earnings, is the critical factor. Lucy v. Lucy, 183 Conn. 230, 234, 439 A.2d 302 (1981). Merely failing to obtain employment does not completely diminish an individual's capacity to earn income from gainful employment.
"It is particularly appropriate to base a financial award on earning capacity where there is evidence that the payor has voluntarily quit or avoided obtaining employment in his field." Hart v. Hart, 19 Conn. App. 91,95, 561 A.2d 151, cert. denied, 212 Conn. 813, 565 A.2d 534 (1989) (citation omitted). Although the original termination was not totally voluntary, clearly, the defendant's continued unemployment is as a result of his changed priorities. His sudden urge to care for his children is unpersuasive. Furthermore, the court cannot reward the conduct, the voluntary chronic alcoholism, which led to the termination. It is appropriate, therefore, that the court consider the plaintiff's earning capacity in determining a proper alimony award. Miller v. Miller, CT Page 497181 Conn. 610, 612-13, 436 A.2d 279 (1980). Hart v. Hart,19 Conn. App. at 91. The defendant is intentionally under-employed. Allowing the defendant the scenario of his choice would be unconscionable. Therefore, the motion to modify child support is denied.
The court finds that as of October 22, 2001 there is a child support arrearage in the amount of three thousand and nineteen ($3,019.00) dollars. There is an additional alimony arrearage in the amount of one hundred and forty-five ($145) dollars. The defendant is ordered to pay that arrearage forthwith in the amount required by the Child Support Guidelines, forty-two dollars and eighty cents ($42.80)
V. Court Orders
The court has considered all the facts found in this memorandum of decision in light of the mandate of Connecticut General Statutes section46b-81. See Smith v. Smith, 185 Conn. 491, 493, 441 A.2d 140 (1981).[7]
The court, having considered all the evidence in light of all relevant statutory criteria, enters the following orders:
 1. The marriage of the parties is dissolved on the grounds of an irretrievable breakdown.
 2. The parties shall have joint legal custody of the minor children issue of the marriage:
Kimberly Hylinski, born May 30, 1987;
Joseph Hylinski, born March 8, 1989;
Theresa Hylinski, born June 21, 1991; and
John Hylinksi, born February 16, 1995
 Although there is joint legal custody, all decisions concerning the children's educational and medical needs shall be within the exclusive authority of the plaintiff.
 3. The primary residence of the children shall be with the plaintiff. The defendant shall have reasonable, flexible and liberal rights of visitation. That visitation cannot commence, however, until the defendant has completed a parenting education class. Additionally, the defendant must refrain from any alcohol use while CT Page 498 in the presence of these children. Finally, until modified by court order, all visits between the defendant and his children shall be supervised.
 4. The plaintiff shall provide to or for the benefit of the minor children health insurance as may be available through her employment, and the defendant shall reimburse the plaintiff for one-half of the cost thereof. Any unreimbursed medical, dental, psychological or therapy expenses incurred on behalf of the minor child shall be shared equally by the parties.
 5. The defendant shall pay to the plaintiff periodic alimony in the amount of one dollar ($1.00) per month. The alimony award shall terminate upon the happening of any of the following events, whichever first occurs: (a) the plaintiff's death; (b) the plaintiff's remarriage; (c) the plaintiff's cohabitation; or (d) six and one-half (6 1/2) years from the date of dissolution.
 6. The defendant shall pay to the plaintiff as and for child support the sum of two hundred and thirty-two ($232.00) dollars per week, an amount in accordance with the Child Support Guidelines. That amount will be reduced as each minor child completes the twelfth grade or attains the age of 19, provided that such child is a full time high school student and resides with the plaintiff. If the child is not in high school, then the child support for that particular child ends when the child attains the age of eighteen. In no event shall the child support be less than required by the Child Support Guidelines.
 7. The parties shall be entitled to claim the dependency exemption for the minor children in accordance with paragraph 7.2 of the October 22, 2001 Stipulation.
 8. The defendant shall keep the plaintiff informed regarding his employment status and shall advise the plaintiff within forty-eight (48) hours of any change in his employment. He shall send copies of any W-2 statements he receives in each year and CT Page 499 shall send copies of pay stubs for thirteen (13) successive weeks from the date hereof and pay stubs for the first thirteen (13) successive weeks for his employment upon any employment change. When the defendant secures employment, a wage execution shall enter immediately.
 9. The plaintiff shall maintain the life insurance policy set forth in her financial affidavit for the benefit of the minor children until the youngest child of the marriage, John, shall reach the age of majority. The defendant shall maintain the G.E. Capital Life Insurance policy listed in his financial affidavit for the benefit of the children of this marriage. The policy shall be maintained for a face amount of one hundred thousand ($100,000) dollars. The plaintiff shall pay the monthly premiums for said policy, and the defendant shall reimburse her within thirty (30) days of the payment.
 10. The defendant shall convey to the plaintiff by quitclaim deed any and all interest he may have in the marital home located at 8 Alfred court, Stratford, Connecticut within thirty days of the date of this order. The plaintiff shall be responsible for, and shall indemnify the defendant against, payment of the mortgage, property taxes and insurance and shall be allowed in full any tax deductions therefore.
 11. The plaintiff is awarded all of the furniture and furnishings located at the marital residence with the exception of those items specifically listed in paragraph 5.5 of the October 22, 2001 Stipulation. The property listed in paragraph 5.5 of the October 22, 2001 Stipulation is awarded to the defendant.
 12. The time-share listed on the plaintiff's financial affidavit shall be sold. The proceeds of the sale, after ordinary expenses, shall be split evenly. However, the defendant's share of the proceeds shall be applied toward any arrearage in the child support payments ordered pursuant to this judgment.
CT Page 500
 13. The plaintiff is awarded the 2000 Chevrolet Lumina and shall be responsible for any outstanding loan and shall indemnify and hold harmless the defendant from any claim or demand thereon.
 14. The defendant is awarded the Chevrolet Cavalier and shall be responsible for any outstanding loan and shall indemnify and hold harmless the plaintiff from any claim or demand thereon.
 15. The parties are jointly responsible for all debts listed on the plaintiff's financial affidavit, those debts totaling forty-thousand, four hundred and four dollars and fifty cents ($40,404.50). The defendant shall pay and hold the plaintiff harmless on his debts to Capitol One, Cross Country Bank and that debt listed as "Other Cards." Each shall indemnify and hold the other harmless from any further liability from the debts as assigned to them by this order.
 16. The plaintiff's interest in a retirement plan with her present employer, St. Vincent's Hospital, shall remain hers free of any claims by the defendant. The defendant shall execute any document necessary to terminate any rights he may have in the plan as may be requested by the plaintiff.
17. Each party shall pay his or her own attorney's fees.
 18. The court orders return of the plaintiff's former name, Tara Malaney.
 19. Except to the extent more specifically set forth herein, each order of the court is to be effectuated within thirty (30) days of the date of this decision.
 20. Except to the extent more specifically set forth herein, each party shall retain all assets as shown on their respective financial affidavits free and clear of any claim or demand by the other, and each party shall be responsible for all CT Page 501 liabilities as shown on their financial affidavits and shall indemnify and hold harmless the other party from liability therefore.
Judgment shall enter in accordance with the foregoing orders.
DEWEY, J.